Argued and submitted June 30, affirmed October 15, reconsideration denied November 21, 1986, petition for review denied January 6, 1987 (302 Or 476)

## STATE OF OREGON,
*Respondent,*

*v.*

## FRANKLIN JOSEPH HARRIS,
*Appellant.*

(10-83-09851; CA A36097)

726 P2d 943

Stephen J. Williams, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Terry Ann Leggert, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Warden, Presiding Judge, and Van Hoomissen and Young, Judges.

WARDEN, P. J.

## WARDEN, P. J.

Defendant appeals from convictions for murder and attempted murder.[1] The only assignment of error requiring our consideration is that relating to the attempted murder charge. Defendant assigns error to the admission of evidence of three prior criminal acts. He contends that the evidence is not relevant to the issue of intent to kill the victim and that, if it were relevant, its prejudicial impact outweighs its probative value to prove intent. We affirm.

Defendant, a Native American, entered a tavern during the evening of November 2, 1983. He displayed a pistol to several persons and told one of them that he would shoot the person who had harrassed his mother. He pointed the pistol at two others and told them that he would have shot them if he had not known them. Later that evening, the tavern owner, Beagley, observed suspicious behavior between defendant and two other men. One of the men stated: "When Indians drink firewater they get crazy." Beagley approached them and warned them not to start any trouble. Defendant pulled the pistol and fired three shots, killing the other two men. Beagley ran out of the tavern. Defendant fired at him, hitting the side of the tavern.

At defendant's trial for the attempted murder of Beagley, the prosecution introduced evidence of three occasions on which defendant had acted violently. The first had occurred five years earlier, in 1978, when defendant had shot a neighbor's dog and had pointed a gun at people in the area. In that incident, according to the testimony, defendant also had said that he had shot blacks and whites and that he would "kill those white mother-fuckers and their dogs." Defendant was drinking at the time. The second incident also had occurred in 1978. According to a police officer, defendant had been extremely intoxicated, hostile and threatening to the police when they responded to a call regarding a disturbance at his home. He retreated into a bedroom and came out with a rifle and threatened to kill the officers if they did not leave. The third incident, which had occurred in 1981, involved his carrying a rifle while chasing another person. The state

---

[1] The charges were consolidated in the indictment and then severed for trial. The convictions were consolidated into a single sentence order.

offered the evidence to prove that defendant intended to kill Beagley when he shot at him, and the court admitted it for that purpose.

■        The admissibility of other bad acts evidence is controlled by OEC 404(3):

> "Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

The Supreme Court recently noted that OEC 404(3) is a rule of inclusion, not exclusion; evidence of other bad acts is admissible if it is relevant, unless its only function is to show the defendant's bad character or there is some other specific basis for excluding it. *State v. Johns,* 301 Or 535, 725 P2d 312 (1986).

■        In *Johns,* the defendant was accused of murdering his wife. The prosecution introduced evidence that he had assaulted his former wife (not the victim in the case), in New Zealand, almost six years earlier. The Supreme Court held the evidence admissible. In doing so, it established a two-phase analysis for trial judges to use in deciding whether to admit evidence of prior bad acts. The judge must first determine the relevance of the evidence to the issues being tried. The court developed five guidelines to consider in determining whether the evidence is relevant to the defendant's intent.

"(1)   Does the present charged act require proof of intent?

"(2)   Did the prior act require intent?

"(3)   Was the victim in the prior act the same victim or in the same class as the victim in the present case?

"(4)   Was the type of prior act the same or similar to the acts involved in the charged crime?

"(5)   Were the physical elements of the prior act and the present act similar?" 301 Or at 555.

If the evidence is relevant under those criteria, the judge must then determine whether the probative value of the evidence of the prior act "is substantially outweighed by the

danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence." OEC 403.

In *Johns* the trial court had essentially followed the two-phase format. The same is true in this case. The judge first held that the evidence of the prior bad acts was probative on the issue of intent and noted the similarities. The similarities included defendant's malice, his dislike of and antagonism toward whites and the relationship between his drinking and violence. We note another significant similarity between the prior acts and those involved here. In all the incidents, defendant had held a gun or rifle and acted in a threatening manner. Under *Johns,* that evidence tends to show that, when defendant shot at Beagley, he intended to kill him. It is admissible for that purpose.

■ We turn to the second phase of the *Johns* analysis. In *State v. Collins,* 73 Or App 216, 220, 698 P2d 969 (1985), we stated four factors for a trial judge to consider in determining whether the probative value of proffered evidence exceeds its prejudicial nature: (1) the need for the evidence; (2) the certainty that the other act was committed and that the defendant was the actor; (3) the strength or weakness of the evidence; and (4) its inflammatory effect on the jury. In *Johns,* the court added a fifth factor: "how time-consuming and distracting proof of other crime evidence will be." 301 Or at 558.

There was at least as great a need for the evidence in this case as there was in *Johns.* Defendant has not disputed any of the prior acts. The evidence was strong on the issue of intent. As the trial judge stated, it related directly to "defendant's attitude about conduct he engages in when he has a firearm and how he intends to deal with firearms towards others."

Many statements by defendant were highly prejudicial and likely to inflame a jury. In *Johns,* however, the court gave the term "prejudicial" a limited meaning: Does the evidence invite the jury to resolve the case on the improper basis that defendant is a bad person? On this point we conclude, as did the Supreme Court in *Johns,* that the "evidence clearly was more relevant to the issue of intent than it

would be to the question of whether defendant was a person of bad character." 301 Or at 558.

As to the last factor, concerning how time-consuming and distracting proof of other bad acts evidence will be, the court noted in *Johns* that "the proof of the prior misconduct would not throw the presentation of the murder case out of balance." 301 Or at 558. The time and effort involved in proving the prior acts in this case is no greater than in *Johns*.

We hold that the trial judge's analysis comports with the guidelines later set forth in *State v. Johns, supra,* and we cannot now say that he acted beyond the range of his discretion by admitting evidence of defendant's prior bad acts.

Affirmed.